## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DON SCHUMACHER RACING, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 1428 |
| v. | ) ) | Judge Gottschall |
| McCANN ERICKSON USA, INC. and MOMENTUM WORLDWIDE, INC., | ) ) ) | Magistrate Judge Valdez |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO JOIN A REQUIRED PARTY PURSUANT TO FED. R. CIV. P. 12(b)(7) AND 19(b) AND FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants McCann Erickson USA, Inc. ("McCann") and Momentum Worldwide, Inc. ("Momentum") (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss for Failure to Join a Required Party Pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b), and for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## I.    FACTUAL BACKGROUND

### A.    The Partnership Agreement

The Pro Stock Motorcycle Drag Race Partnership Agreement ("Partnership Agreement"), the contract at issue in this case, governed the terms and conditions of sponsorship by the United States Army Accessions Command ("Army-AC"), a non-party to this action, of a pro stock motorcycle racing team organized and managed by Don Schumacher Racing ("DSR").  The Army-AC is a subordinate command of the United States Army Training and Doctrine Command,

---

[1] Defendants join their Rule 12(b)(6) and (7) motions in a single filing, as permitted by Fed. R. Civ. P. 12(g)(1) ("A motion under [Rule 12] may be joined with any other motion allowed by [Rule 12]").

which is the U.S. Army branch responsible for recruitment, education, and training efforts. *See* <http://www.army.mil/institution/organization/unitsandcommands/>.

As alleged in the Complaint, the Partnership Agreement was originally entered into on October 19, 2005 by Relay, Inc., acting as agent for Leo Burnett USA, Inc. ("Leo Burnett"), *on behalf of the Army-AC.* (*See* Compl., Exh. A (emphasis added).) The following year, in June 2006, the Partnership Agreement was assigned by Leo Burnett to McCann, which assumed the same role vis-à-vis the Army-AC as previously held by Leo Burnett, *i.e.*, the Army-AC's agent for marketing and advertising purposes. (*See id.*, Exh. B ("Assignment").) Momentum was not a party to the Assignment.

Under the terms of the Partnership Agreement, the Army-AC would sponsor DSR's racing team by providing payments to DSR in accordance with a payment schedule set forth therein, with the possibility of bonus payments based on team results. (*See id.*, Exh. A, § 6.) In exchange for the payments, DSR was required, *inter alia*, to display Army trademarks and logos on its equipment, and undertake other marketing efforts on behalf of the Army, including making its racers and staff available for media and public events. (*See id., Exh.* A, §§ 3.2-3.4.) In addition to these marketing and public relations efforts, DSR was required to perform all duties necessary to field a competitive race team, including crew and equipment maintenance and vehicle testing. (*See id.*, Exh. A, § 5.)

**B.     Contract Term and Renewal**

At inception, the initial term of the Partnership Agreement spanned a period of one year, from January 1, 2006 to December 31, 2006 ("Contract Year"), and contemplated subsequent renewals only if agreed upon by the parties, *in writing*, on a year to year basis through December 31, 2010. (*See id.*, Exh. A, §§ 1.2, 2.2.) To exercise its right of renewal for the following year, the Army-AC was required to give DSR written notice of its intention to renew prior to July 15, 2006,

and in the event the parties failed to agree prior to August 1, 2006, the right of renewal was considered null and void.   (*See id.*, Exh. C (letter informing DSR that "[t]he US Army has decided to re-new primary partnership of the Top Fuel Car [a separate agreement] and Pro Stock Motorcycles for the 2007 race season.")  The right to renew on a year to year basis, in writing, and the July 15 and August 1 deadlines applied to all subsequent renewal years.   The Partnership Agreement also contained a clause that required any waiver or modification of its terms to be expressly agreed upon in writing and signed by the parties.  (*See id.*, Exh. A, §§ 13, 19.)

       **C.**     **DSR's Allegations**

       DSR's claims are based on Defendants' purported breach of an *oral* agreement to renew the Partnership Agreement on behalf of the Army-AC for the 2008 racing season.  (Compl. ¶ 5.)  DSR contends that at some point between July 15, 2007 and August 1, 2007, Defendants and DSR orally agreed to renew the Partnership Agreement through 2008.  DSR alleges that this was the case in previous years.  (*Id.* ¶¶ 14-17.)  DSR alleges that the following month, in September 2007, contrary to their supposed oral agreement, Defendants informed DSR that the Partnership Agreement would not be renewed for the 2008 season, which, according to DSR, constituted a breach of the Partnership Agreement.  (*Id.* ¶ 19.)

       The damages sought by DSR from Defendants' purported breach of their oral renewal agreement include DSR's investment in a new motorcycle engine, its purchase of new equipment and expansions for the racing team, and other obligations pertaining to contracts that DSR entered into with crew members for the 2008 season, all of which, DSR contends, totaled in excess of $4 million.  (*Id.* ¶¶ 18-22.)

**II.**     **ARGUMENT**

       The Complaint artfully omits what is immediately obvious upon reviewing the introductory paragraph in the Partnership Agreement, which is the underlying contract upon which

this action is based.   McCann accepted obligations under the Partnership Agreement (by assignment) *explicitly as agent* for the Army-AC, a component of the U.S. Army, which is the principal to the Partnership Agreement and the real party-in-interest in this case.   Importantly, Momentum was not a party to the assignment, a critical fact that DSR also conveniently ignores when conjoining the two Defendants in making its allegations.

Accordingly, as agent to a disclosed principal, McCann has no underlying liability to DSR for any purported breach of the Partnership Agreement.   DSR's only recourse, if any, is to file suit against the Army-AC, which must be brought in the United States Court of Federal Claims, the exclusive forum in which contract actions against the U.S. Government or its agencies, in excess of $10,000, may be brought. As the principal party under the Partnership Agreement, the Army-AC is an indispensible party to this litigation – indeed the *sole* indispensible party – and DSR's failure to join the Army-AC, or even to identify it pursuant to Rule 19(c), mandates dismissal under Rule 12(b)(7).

In addition, the Complaint also fails to state a cognizable claim against Defendants and must be dismissed pursuant to Rule 12(b)(6) for a number of different reasons.   Most significantly, DSR's claims for breach of oral and written contract are barred by a fundamental tenet of agency law dictating that the agent of a disclosed principal cannot be liable on a contract entered into within the scope of the agency.   Moreover, DSR's contract claims, as well as its promissory estoppel claim, are predicated upon an alleged oral agreement to renew the Partnership Agreement for the 2008 racing season, yet these claims are precluded by the Statute of Frauds because the Partnership Agreement, by its own terms, cannot be performed within one year.   Finally, having alleged the existence of an express contract, DSR cannot recover based on an implied or quasi contract theory as a matter of law.   For all of these reasons, the Complaint must be dismissed in its entirety.

**A.    This Action Must be Dismissed Pursuant to Rule 19(b) Because the Army-AC is a Required Party to the Litigation and Because Joinder is Not Feasible.**

The purpose of Rule 19 is to permit joinder of all materially interested parties in a single lawsuit so as to protect interested parties, and avoid the waste of judicial resources. *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). A motion to dismiss under Rule 19 requires a two-step analysis. First, the Court must determine whether or not a party is necessary, *i.e.*, "a person to be joined if feasible." *U.S. ex rel Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 478 (7th Cir. 1996). Second, if a party is found to be necessary under Rule 19(a), but cannot be joined, the Court must then decide if the action can proceed in "equity and good conscience" without the required party, or whether it should be dismissed. Fed. R. Civ. P. 19(b). Here, as the principal party under the Partnership Agreement, the Army-AC is a required party whose joinder is not feasible because it would deprive this Court of subject matter jurisdiction.

1.    <u>The Army-AC is a Required Party Under the Rule 19(a) Factors.</u>

To determine if a party is required under Rule 19(a), courts consider whether: (1) complete relief can be accorded among the present parties to the lawsuit; (2) the absent party's ability to protect its interest will be impaired; and (3) any existing parties might be subjected to a substantial risk of multiple or inconsistent obligations unless the absent party is joined. Fed. R. Civ. P. 19(a). Consideration of these factors weighs heavily in favor of finding the Army-AC to be a necessary party to this litigation.

First, complete relief will not be available to the parties under Rule 19(a)(1). This is because Defendants will assert unique legal defenses to DSR's contract claims that would preclude relief to DSR in the Army-AC's absence – for example, Defendants' incapacity to be sued as agents for a disclosed principal under the Partnership Agreement. (*See* Section II.A., *infra*.) In this regard, complete relief cannot be accorded to DSR without the participation of the Army-AC, which is the

disclosed principal in the Partnership Agreement, and liable for any alleged breach.

Second, the ability of the Army-AC to protect its interest would be significantly and irreparably impaired if this action proceeded in its absence. The entire basis of DSR's claim rests on the single allegation that Defendants made an oral promise to DSR to renew the Partnership Agreement, a contract to which the Army-AC was indisputably a party, for the 2008 racing season. Thus, in the event of an adverse judgment, the Army-AC could potentially be liable for breach without having the opportunity to defend itself. It is precisely for this reason that the Seventh Circuit and other courts have concluded that a party to a contract is a necessary party under Rule 19(a). *See Hall*, 100 F.3d 476, 478-79; *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982) ("In breach of contract actions, all parties to the contract are necessary ones."); *Elmhurst Consulting, LLC v. Gibson*, 219 F.R.D. 125, 128 (N.D. Ill. 2003) (same); *Burger King Corp. v. Am. Nat'l Bank and Trust Co.*, 119 F.R.D. 672, 675 (N.D. Ill. 1988) ("If the absent party has a legally protected interest in the subject matter of the action – i.e. he is a party to a contract at issue – he falls squarely within the terms of Rule 19(a)(2).").

In *Hall*, the Court of Appeals stated that a judicial declaration as to the validity of a contract necessarily affects, as a practical matter, the interests of all parties to the contract. 100 F.3d at 479-80. The Court observed that as "a party to the lease contracts at issue here, the [absent party] has a commercial stake in the outcome of this litigation. It therefore would appear beyond dispute that the party is a necessary party under Rule 19(a)." *Id.* at 479. Here, the Army-AC, as principal under the Partnership Agreement, undoubtedly has a commercial stake in the Partnership Agreement and in the outcome of this litigation. Indeed, DSR's allegations, if true, suggest that the Army-AC was committed to perform under the Partnership Agreement for 2008 but breached. This is the very concern articulated in *Hall* when the court found the absent party to be prejudiced.

Defendants also cannot adequately represent the Army-AC's interests in the instant

action.  On the contrary, as noted above, McCann (and for the sake of argument, Momentum) have every reason to disclaim liability by virtue of their status as agents to the Army-AC for purposes of the Partnership Agreement, thereby putting Defendants and Army-AC at odds in defending against DSR's claims.  *See Capital Markets Int'l, Ltd. v. Gelderman, Inc.*, No. 97 C 7717, 1998 WL 472468, *4 (N.D. Ill. Aug. 7, 1998) (noting that defendant's attempt to shift liability to an absent party, and the preclusive effect of such a finding, would prejudice the absent party).

Moreover, a ruling in favor of either party could have a preclusive effect on any subsequent litigation against the Army-AC in the Court of Federal Claims, whether brought by DSR for breach of the Partnership Agreement, or by Defendants seeking indemnification from the Army-AC.  *See Reliable Personnel, Inc. v. Custom Cartage, Inc.*, 1994 WL 406405, *5 (N.D. Ill. Aug. 2, 1994) ("The case law under Rule 19 has recognized that the establishment of a negative precedent can provide the requisite prejudice to the absentee.") (citations omitted); *Rivera Rojas v. Loewen Group Intern., Inc.*, 178 F.R.D. 356, 362 (D. P.R. 1998); *Dou Yee Enters. v. Advantek, Inc.*, 149 F.R.D. 185, 187 (D. Minn. 1993) (finding that joinder of subsidiary was required to avoid preclusive effect on fact issues and subsidiary's rights and liabilities, and to prevent impairment of subsidiary's ability to defend itself in a subsequent lawsuit plaintiff might file).  Because the Army-AC is the party to the Partnership Agreement who would be liable for its breach, its participation in this case is necessary under Rule 19(a).

       2.    <u>Joining the Army-AC in the Instant Action is not Feasible.</u>

Normally, to cure the defects arising from non-joinder, the absent party would be joined in the existing suit.  In this case, however, the Army-AC cannot be joined as a defendant because, under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over claims in excess of $10,000 arising from contracts involving the U.S. Government or its agencies, and DSR has alleged damages of over $4 million.  *See*  28 U.S.C. § 1491(a)(1); *Marceau v. Blackfeet*

*Housing Authority*, 455 F.3d 974, 987 (9th Cir. 2006) (noting that the District Court correctly determined that it was without jurisdiction to hear Plaintiffs' contract claims against HUD).

The Army-AC is a branch of the United States Army and a government agency falling within the Tucker Act. *See Stephenson v. United States*, 58 Fed. Cl. 186, 187 (2003) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983). As a result, joinder is not feasible because this Court would lack subject matter jurisdiction over the Army-AC.

3. The Army-AC is a Required Party to this Litigation Under the Rule 19(b) Factors.

Given that the Army-AC is a required party and joinder is not feasible, dismissal is required under Rule 19(b). Rule 19(b) provides four factors to be considered in determining whether a party is "indispensable." These factors are: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or existing parties; (2) the extent to which any prejudice could be lessened or avoided…; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder." Fed. R. Civ. P. 19(b); *see Hall*, 100 F.3d at 481 (noting that these four factors are not rigid, technical tests, but rather guides to the overarching equity and good conscience determination) (quotations omitted).

With respect to the first factor, courts again weigh possible prejudice to the absent parties, as well as to the current parties, which is similar to the analysis under Rule 19(a)(1). *See Shell Oil Co. v. Aetna Casualty and Surety Co.*, 158 F.R.D. 395, 400 (N.D. Ill. 1994). For this reason, parties to a contract are considered to be "the paradigmatic example of an indispensable party" for the same reason as they are necessary parties under Rule 19(a), because a judgment rendered in the party's absence would impair its ability to protect its interests in the contract. *See Elmhurst*, 219 F.R.D. at 128 (citations omitted); *Capital Markets*, 1998 WL 473468, at *3 ("Fundamental joinder principles dictate that contracting parties are indispensable parties to

litigation."). Thus, the same concerns articulated above with respect to the Army-AC's inability to protect its interests apply with equal force here for purposes of finding the Army-AC to be indispensable under Rule 19(b). *See Expeditors of Washington, Inc. v. Expeditors (Japan) Ltd.*, 2004 WL 2369911 (W.D. Wash. Oct. 7, 2004) (granting motion to dismiss for failure to join an indispensable party where one of the parties to an asset purchase agreement was not named in a suit alleging breach of the agreement).

The second factor under Rule 19(b) addresses the ability of the court to tailor relief in order to minimize prejudice to absent or existing parties. As a practical matter, however, the prejudice to Defendants cannot be lessened or avoided to any extent by permitting Defendants to assert a contingent claim for indemnification against the Army-AC in the present action. While a party's ability to implead the absent party as a third-party defendant may sometimes resolve problems arising from non-joinder, *see, e.g., Pasco v. Int'l (London)Ltd. v. Stenograph Corp.*, 637 F.2d 496, 499 (7th Cir. 1980), here, Defendants cannot implead the Army-AC because the Court of Federal Claims has exclusive jurisdiction over claims more than $10,000 brought against the Army-AC. Consequently, short of dismissal, there is no other relief available to the parties that could rectify the prejudice arising from the Army-AC's absence.

Finally, there is an alternative forum available to DSR. It may bring its claims against the Army-AC, the real party-in-interest in this case, directly in the Court of Federal Claims, which is uniquely situated to adjudicate contractual disputes involving the U.S. Government and its agencies, and has exclusive jurisdiction over such actions. Indeed, a merits judgment adverse to DSR's interest would incentivize it to pursue other claims in the Court of Federal Claims. In this regard, courts have an interest in avoiding multiple and inefficient litigation when analyzing non-joinder issues under Rule 19. *See Reliable*, 1994 WL 406405, at *5; *Acton*, 668 F.2d at 81. DSR will not be deprived of a forum in which to pursue its claims. Because the Army-AC is a required

party, which cannot be joined in this action, the Complaint and the action must be dismissed pursuant to Rule 12(b)(7).

**B.    DSR's Claims Must Be Dismissed Pursuant to Rule 12(b)(6).**

In addition, the Complaint must be dismissed pursuant to Rule 12(b)(6) because DSR fails to state a cognizable claim against Defendants.  Indeed, both the contract claims and equitable claims (*i.e.*, promissory estoppel and quasi-contract) fail on substantive grounds for two primary reasons.  First, Defendants cannot be liable to DSR for breach of the Partnership Agreement (in contract or on any equitable grounds relating thereto) as a matter of law because they were acting as agents of a disclosed principal, the Army-AC.  Second, the Illinois Statute of Frauds requires contracts contemplating performance over one year to be in writing in order to be enforceable, which is true of the Partnership Agreement.  This prohibition similarly bars DSR's equitable claims because they arise from the same alleged oral agreement upon which its contract claims are based.

1.    As the Agents of a Disclosed Principal, Defendants Cannot be Liable
for Breach of the Partnership Agreement as a Matter of Law.

DSR's claims against Defendants must be dismissed as a matter of law because DSR's own Complaint demonstrates that Defendants were acting as agents for a disclosed principal – the Army-AC.  It is well-settled Illinois law that an agent of a disclosed principal is not liable in contract unless the agent has agreed to become personally liable.  *Chicago Title & Trust Co. v. DeLasaux*, 336 Ill. 522, 526 (1929) ("When an agent in making a contract discloses his agency and the name of his principal, or where the party dealing with the agent knows that the agent is acting as an agent in making the contract, the agent is not liable on the contract, unless he agrees to become personally liable") (citations omitted).  *See also Landau v. Landau*, 409 Ill. 556, 564 (1951) (noting "the well-settled principle of law that an agent is not liable for the acts of a disclosed principal, unless he takes some active part in violating some duty the principal owes to a third person") (*citing DeLasaux,* 336 Ill. 522 (1929) and *Restatement of the Law of Agency* §320); *Roberts v. Standard*

*Ins. Co.*, 2004 WL 2367741, *6 (N.D. Ill. Oct. 15, 2004) ("In Illinois, an agent of a disclosed principal is not liable on a contract nor party to a contract unless he agrees to become personally liable") (citations omitted); *Innkeepers' Telemanagement and Equipment Corp. v. Hummer Management Group, Inc.*, 841 F.Supp. 241, 245 (N.D. Ill. 1993) ("It is well established that, where the principal … is disclosed, as is the case here, the agent is not liable for the principal's alleged breach of contract.") (citation omitted); *Byrne v. Dew*, 1991 WL 83160 *2 (N.D. Ill. May 9, 1991) ("[I]f an agent discloses his agency in the name of the principal, the agent is not liable on the contract unless he agrees to become personally liable.") (citations omitted); *Hernandez v. Childers*, 736 F. Supp. 903, 913 (N.D. Ill. 1990) ("Under Illinois law, 'where the identity of the principal for whom an agent acts is sufficiently disclosed to a third party, then the principal and not the agent is liable on the contract.'") (*citing Powers v. Warner Bros. Records, Inc.*, 411 F. Supp. 747, 748 (N.D. Ill. 1976) and *Valkenburg K-G v. The S.S. Henry Denny*, 295 F.2d 330, 333 (7th Cir. 1961)); *Shah v. Atlantic Richfield Co.*, 1986 WL 4729 *2 (N.D. Ill. Apr. 16, 1986) (same).

In this case, Defendants were unquestionably acting on behalf of a disclosed principal, and there are no allegations that Defendants agreed to be personally liable.  Indeed, any such allegation would be contrary to the terms of the fully integrated written agreement, which expressly states that the advertising agency is signing *on behalf of* the Army-AC.  (*See* Compl., Exh. A, intro paragraph ("This 'Agreement' is … by and between Relay, Inc. … acting as agent for Leo Burnett USA, Inc. ('Leo Burnett'), *on behalf of the United States Army Accessions Command* …") (emphasis added); Compl., Exh. A, signature block (Relay signing "as agent for Leo Burnett USA, Inc. *on behalf of its client The United States Army Accessions Command*") (emphasis added)); Compl., Exh. C (September 26, 2006 letter from Momentum to DSR informing DSR that "the US Army has decided to re-new" the partnership Agreement for the 2007 race season).)

There are also no allegations that Defendants in any way exceeded the scope of

authority granted to them by the Army-AC, and no claims in tort that Defendants took an active part in violating some duty owed by the Army-AC to DSR. Accordingly, the well-settled rule applies: Defendants acting as agents for a disclosed principal are not liable to DSR as a matter of law on any type of contract theory – whether it be breach of express contract, breach of implied contract, or a theory of promissory estoppel. All of DSR's claims against Defendants must be dismissed for this reason alone.

> 2.    The Illinois Statute of Frauds Renders the Alleged Oral Agreement Unenforceable.

DSR's contract and promissory estoppel claims are also barred by the Illinois Statute of Frauds, which requires contracts whose terms cannot be performed within one year to be in writing in order to be enforceable. *See* 740 ILCS 80/1; *Dresser Indus., Inc. v. Pyrrhus AG*, 936 F.2d 921, 927 (7th Cir. 1991) (noting that "to avoid the mandates of the Statute of Frauds, an oral contract must be capable of being fully performed within one year of the date the parties entered into the contract.").

The one-year period for purposes of the Statute of Frauds is measured from the time of the making of the alleged oral agreement, here August 1, 2007 at the latest (*see* Compl. ¶ 17), which would require the renewed Partnership Agreement to be capable of being performed by August 1, 2008 to fall outside its scope. In *Sherwin v. Ault*, 219 Ill. App. 3d 213, 215 (3d Dist. 1991), the plaintiff brought a breach of contract action based on an alleged oral agreement to renew a written farm operating agreement. The oral renewal, allegedly entered into in October 1987, covered the period between March 1, 1988 and December 31, 1988. The court dismissed the action on Statute of Frauds grounds, stating that an "oral renewal of the agreement, to be enforceable as a contract by its terms capable of full performance within a year, would have to have been made after December 31, 1987. Any agreement for the March through December, 1988 crop year which was made prior to December 31, 1987 would have to have been in some written form to avoid the bar of

the Statute of Frauds." *Id.* Similarly, in the present case, performance within one year of the alleged oral renewal of the Partnership Agreement would be impossible. The Contract Term spans the entire calendar year, from January 1 to December 31, of each renewal year. (*See* Compl., ¶ Exh. A, § 1.2.) Thus, the rights and obligations of the parties under the Partnership Agreement would end no earlier than December 31, 2008, which is more than one year after the alleged oral agreement was reached on or about August 1, 2007.

The Partnership Agreement required DSR to undertake various efforts in managing the race team, and to make its team members and vehicles available for media and public events on behalf of the Army through the entire 2008 calendar year. (*See id.*, Exh. A, §§ 3.4-3.5.) Payments were to be made to DSR according to a set schedule of successive installments provided on or before the first day of January 1, 2007 and concluding October 1, 2008. (*See id.*, Exh. A, § 6.) Thus, the final payment for the 2008 season would occur two months after the one year threshold (August 1, 2008). Indeed, the fact that the parties' obligations under the Partnership Agreement were expected to continue throughout the entire calendar year is confirmed by DSR's own interpretation of the contract term, as alleged in the Complaint. (*See, e.g.,* Compl. ¶ 25 (stating that the oral agreement was intended to extend the Partnership Agreement *through* 2008).) In short, assuming *arguendo* that an oral agreement was entered into on August 1, 2007, the renewed Partnership Agreement would impose obligations upon the parties that could not be concluded until December 31, 2008. Thus, the claim is barred by the Statute of Frauds.

With respect to DSR's equitable claims, courts have rejected the notion that promissory estoppel can rescue a claim based on promises that would otherwise be barred by the Statute of Frauds. *See Architectural Metal Sys., Inc. v. Consolidated Sys., Inc.,* 58 F.3d 1227, 1231 (7th Cir. 1995) (citing *First Nat'l Bank v. McBride Chevrolet, Inc.,* 267 Ill.App.3d 367, 373 (4th Dist. 1994)); *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.,* 933 F. Supp. 1381, 1390 (N.D. Ill.

1996).  Thus, the Statute of Frauds bars DSR's promissory estoppel claim as well.

                3.        Quasi-Contract Claim is Precluded by Allegations of an Express
                              Contract.

          DSR's quasi-contract claim fails for the independent reason that a plaintiff cannot recover under a quasi-contract theory where the plaintiff alleges the existence of an express contract between the parties.  Illinois courts generally consider quasi-contract, implied (in law) contract, and unjust enrichment to be synonymous forms of equitable relief and subject to the same analysis for purposes of pleading requirements.  *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1114 n.7 (7th Cir. 1994) (citing cases).

          It is well established under Illinois law that unjust enrichment or quasi-contract is only available when there is no adequate remedy at law.  *See Nesby v. Country Mut. Ins. Co.,* 346 Ill. App. 3d 564, 567 (5th Dist. 2004) ("Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application."); *People ex rel. Hartigan v. E & E Hauling, Inc.,* 153 Ill. 2d 473, 497 (1992); *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 499 (2001).  Thus, while a plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract between the parties in the counts for unjust enrichment and promissory estoppel.  *See The Sharrow Group v. Zausa Development Corp.,* No. 04 C 6379, 2004 WL 2806193, at *1 (N.D. Ill. Dec. 6, 2004) (dismissing the plaintiff's unjust enrichment count where it incorporated allegations of a valid and enforceable agreement into that count and also attached a copy of the relevant contracts to the complaint).  Here, DSR's quasi-contract claim in Count IV incorporates the same allegations of an express contract upon which its breach of contract claims are based.  In short, DSR's quasi-contract claim cannot survive alongside its allegation that the parties were subject to a binding and enforceable Partnership Agreement.

Moreover, to successfully plead a claim based on quasi-contract, a plaintiff must allege that the defendant received and retained a benefit that should be repaid under principles of equity. *See HPI Health Care v. Mt. Vernon Hosp.*, 131 Ill.2d 145, 152 (1989). DSR, however, has failed to allege any benefit conferred upon Defendants that should be disgorged. Indeed, the only "damages" sought by DSR stem from costs that it purportedly incurred preparing to perform its obligations under the Partnership Agreement for 2008. The Complaint, however, is devoid of any suggestion that Defendants improperly benefitted from the alleged oral renewal of the Partnership Agreement. Thus, DSR's quasi contract claim fails as a matter of law and must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to Join a Required Party Pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b), and for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6), should be granted.

Dated: June 30, 2008

Respectfully submitted,

McCANN ERICKSON USA, INC. and MOMENTUM WORLDWIDE, INC.

By  /s/ David R. Lidow
     One of Their Attorneys

Frederic R. Klein
Deborah Rzasnicki Hogan
David R. Lidow
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000