IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DON SCHUMACHER RACING, an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>McCANN ERICKSON USA, INC., and MOMENTUM WORLDWIDE, INC.,<br><br>Defendants. | No.: 08 C 1428<br>Judge Gottschall<br>Magistrate Judge Valdez |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO DEFENDANTS' MOTION TO DISMISS

NOW COMES, Plaintiff, Don Schumacher Racing, ("DSR") by and through its attorneys and respectfully submits its Memorandum of Law in Support of its Response to Defendants' Motion to Dismiss, stating as follows:

### I.   PROCEDURAL BACKGROUND

On March 10, 2008, DSR filed a four-count Complaint against Defendants, McCann Erickson USA, Inc., ("McCann"), and Momentum Worldwide, Inc., ("Momentum") (collectively "Defendants"), alleging Breach of Oral Contract, Breach of Written Contract, Breach of Implied Contract/Quasi Contract, and Promissory Estoppel arising out of the Defendants' failure to honor an oral agreement to renew a written agreement relating to an NHRA sponsorship with DSR. In response to Plaintiff's Complaint, Defendants filed a Motion to Dismiss for failure to join a required party under Federal Rule of Civil Procedure 12(b)(7) and 19(b) and for failure to state a claim under Federal Rule Civil Procedure 12(b)(6).

## II. FACTUAL BACKGROUND

McCann Erickson is one of the world's largest advertising agencies. *Plaintiff's Complaint, Paragraph 2.* Momentum is a leading event marketing agency. *Plaintiff's Complaint, Paragraph 3.* Since 1997, McCann Erickson and Momentum have also been known as and/or done business as McCann Worldgroup. *Plaintiff's Complaint, Paragraph 4.*

On October 19, 2005, Leo Burnett USA, Inc. ("Leo Burnett") through its agent, Relay, Inc. ("Relay"), entered into a written contract with DSR for sponsorship of DSR's NHRA Pro Stock Motorcycle Drag Racing team through December 31, 2010. *Plaintiff's Complaint, Paragraph 10.* On June 26, 2006, Leo Burnett and McCann Erickson executed an assignment and assumption agreement to the Contractual Partnership, whereby Leo Burnett assigned *all* its rights, title, interests, and duties in and to the Contractual Partnership to McCann Erickson, which McCann Erickson assumed and accepted. *Plaintiff's Complaint, Paragraph 11.*

Notably, each and every year between 2000 and 2006, Leo Burnett or McCann Erickson verbally committed to renew the Contractual Partnership with DSR prior to the contract deadline of August 1. *Plaintiff's Complaint, Paragraph 14.* Each year, the parties then memorialized in writing the verbal commitment to renew the Contractual Partnership *after* August 1. *Plaintiff's Complaint, Paragraph 15.* Plaintiff evidenced this practice by attaching correspondence from Momentum, dated September 26, 2006, indicating the renewal of the 2007 sponsorship. *Plaintiff's Complaint, Paragraph 16 and Exhibit C to Plaintiff's Complaint.* However, in September 2007, after the verbal

commitment was given, Momentum contacted DSR and indicated the Contractual Partnership would not be renewed. *Plaintiff's Complaint, Paragraph 19.*

III.　**STANDARD OF REVIEW & ARGUMENT**

In ruling on a motion to dismiss, a court must accept as true all allegations of the complaint. *Selective Ins. Co. of S.C. v. City of Paris*, 2008 WL 927956, *1 (C.D.Ill.), citing, *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 (7th Cir. 2000); *see also Doughty v. Sheahan*, 1998 WL 120350, *3 (N.D.Ill.).

　A.　**The Army Is Neither A "Necessary" Nor "Indispensable" Party Under Rule 19(a).**

Rule 12(b)(7) provides for dismissal of an action where a litigant fails to join a party under Rule 19. The moving parties [Defendants] have the burden of showing that a party must be joined for just adjudication. *Selective Ins. Co. of S.C.*, 2008 WL 927956 at *1, see also, *Ploog v. HomeSide Lending, Inc.*, 209 F.Supp.2d 863, 873 (N.D.Ill. 2002)(holding that the proponent of the Rule 12(b)(7) motion to dismiss has the burden of producing evidence which shows the nature of the absent party's interest and that the protection of that interest will be impaired or impeded by the absence).

Defendants argue the United States Army ("Army") is a "sole indispensible party" and the real party in interest; thus, Plaintiff's failure to join this party should require dismissal according to Federal Rules of Civil Procedure 19(b). Defendants' request for dismissal is misplaced because the Army is not a "necessary" party under Rule 19(a). However, assuming arguendo that this Court finds the Army is a necessary party under Rule 19(a), the Army is not an "indispensable" party under Rule 19(b), as such, dismissal of this action would not be required.

Federal Rule of Civil Procedure Rule 19, as amended in 2007, sets forth a two part test for determining whether a court must dismiss an action for failure to join an indispensable party. *Pettiford v. City of Greensboro*, 2008 WL 2276962 at *2 (M.D.N.C.). First and foremost, the Court must determine if the absent party is "necessary" under Rule 19(a). *Id.*, see also, *Continental Casualty Co. v. American Home Assurance Co.*, 2008 WL 1752231, *2 (S.D.N.Y.). If the Court deems the absent party necessary, the Court will order joinder of the absent party and the cause of action will continue. However, in some instances, joinder is required yet it is not feasible to join the necessary party. In that scenario, the Court must determine if the necessary party is "indispensable" under Rule 19(b), such that the cause of action should be dismissed. *Pettiford*, 2008 WL 2276962 at *2.

Therefore, if a party is found "necessary" pursuant to Rule 19(a) but joinder is infeasible, the action should <u>only</u> be dismissed if the party is also determined "indispensable" pursuant to Rule 19(b). *Continental Casualty Co.*, 2008 WL 1752231 at *2 (emphasis added). Most importantly, dismissal for non-joinder under Federal Rule 19 is a remedy employed extremely reluctantly, "only when the defect cannot be cured and serious prejudice or inefficiency will result." *Pettiford*, 2008 WL 2276962 at *2. The burden of proof is on the moving party [Defendants in this matter] to demonstrate that the absent person must be joined to facilitate a just adjudication. *Id.* For the reasons set forth below, the Army is neither a necessary nor indispensable party.

1. **The Army is not a "necessary" party.**

This Court must determine if it should join the Army as an absent party under Rule 19(a). Joinder is required when: (1) in the Army's absence, the Court cannot accord

4

complete relief among existing parties; or (2) the Army claims an interest in the action and if the Court were to resolve the action in the Army's absence, it would impair the Army's ability to protect its interests or leave an existing party subject to substantial risk, such as, incurring inconsistent obligations because of the interest. *Id.* at *3.

Defendants in this matter present only two reasons why the Army is a "required party" under Federal Rule 19(a) analysis. First, "that Defendants will assert unique legal defenses...that would preclude relief to DSR in the Army['s] absence." Apparently, Defendants argue that DSR would be harmed if the Army was not a party here. Defendants' reasoning is nonsensical because DSR may seek relief in the Court of Claims against the Army if the Court dismissed this action. Therefore, Defendants' first argument lacks merit and must fail.

Defendants' second argument states that "the ability of the Army to protect its interest would be significantly and irreparably impaired if this action proceeded in its absence [as] in the event of an adverse judgment, the Army could potentially be liable for breach without having the opportunity to defend itself." However, Plaintiff is not pursuing the Army in this cause of action and as such the Army cannot be liable for breach in this matter. Again, Defendants fail to make a persuasive argument when the Plaintiff or Defendants would have adequate relief as they could at any time litigate the separate issues, if they exist, against the Army in the Federal Court of Claims.

Simply put, Defendants have not set forth any cognizable arguments that the Army is a necessary party. The Court can accord complete relief among the existing parties. As such, this Court need not move forward with the analysis required under Rule 19(b).

5

## 2. Likewise, the Army is not an "indispensible" party to this action.

If joinder is not feasible because it deprives the Court of jurisdiction, the Court must proceed under Rule 19(b) to determine whether "in equity and good conscience" the action should continue among the existing parties or be dismissed. *Continental Casualty Co. v. American Home Assurance Co.*, 2008 WL 1752231, *2 (S.D.N.Y.). In the case at bar, joinder of the Army is not feasible because the Court would lose subject matter jurisdiction. Pursuant to the Tucker Act, an action against the United States Government, in a matter involving a claim over $10,000, must be brought in the Court of Federal Claims. 28 U.S.C. § 1491(a)(1). As such, this Court, if finding the Army is a necessary party, must apply the 19(b) analysis to determine if the Army is an indispensible party.

Rule 19(b), and its supporting case law, sets forth four factors to consider in determining whether a party is indispensable: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. *Id.*, citing F.R.C.P. 19(b).

Defendants fail to meet their burden entirely regarding why the Army is an indispensable party. Instead, Defendants merely argue their "same concerns articulated above [under the 19(a) analysis] with respect to the Army's ability to protect its interests." Defendants do not address *any* of the factors set forth in F.R.C.P. 19(b). The Defendants have not attempted to satisfy their burden by "showing the nature of the interest possessed" by the Army and "how that interest will be impaired by the absence."

6

*Sykes v. Hengel*, 220 F.R.D. 593, 596 (S.D.Iowa 2004). Defendants have not presented "affidavits of persons having knowledge of these interests [or any] other relevant extra-pleading evidence" to support their claim that the Army is indispensible. *Id.*, quoting, *Martin v. Local 147, Int'l Bro. of Painters,* 775 F.Supp. 235, 236-7 (N.D.Ill. 1991). Stated differently, the Defendants have not, and cannot, meet their burden; accordingly, their motion must be denied.

Defendants also argue they are prejudiced because they "cannot implead the Army because the Federal Court of Claims has exclusive jurisdiction." However, while Defendants may wish to avoid multiple litigation, or inconsistent relief, or sole responsibility shared with another, it takes more than impending hazard of such a predicament to make a party indispensable. *Marshall v. Navistar Intern. Transp. Corp.*, 168 F.R.D. 606, 610 (E.D.Mich. 1996). Further, contribution and indemnity are not legitimate bases for joinder of potential tortfeasors under Rule 19. *Pettiford*, 2008 WL 2276962 at \*7. As such, Defendants' argument that they are prejudiced because they cannot implead the Army into this action does not rise to the level of making the Army an indispensible party. Defendants could always file their own separate cause of action against the Army for any claims they believe are available to them against the Army in the Federal Court of Claims.

Defendants' final argument is that dismissal is merited because Plaintiff has an alternative forum to bring its claim against the Army. This is completely irrelevant, as plaintiff's ability to litigate its claim elsewhere does not mean a non-party should be deemed indispensible for purposes of dismissal. Defendants have failed to present evidence under the four factors to allow this Court to determine that the Army is

indispensible in this action, as such Defendants' request for dismissal should be denied and this Court should proceed with the current parties to the action.

### B. Plaintiff Has Stated Claims Upon Which Relief Can Be Granted.

The Court will recall that in ruling on a motion to dismiss, the Court must presume the well pleaded allegations of the complaint to be true and draw all reasonable inferences in favor of the plaintiff. *Doughty*, 1998 WL 120350 at *3. A motion to dismiss pursuant to Rule 12(b)(6) does not test whether a plaintiff will prevail on the merits, but rather tests whether the plaintiff has properly stated a claim upon which relief can be granted. *Id.* The Court should only dismiss a complaint for failure to state a claim if, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.*, citing, *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

Defendants argue that Plaintiff failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) an agent cannot be liable for a contract under agency; (2) the statute of frauds bars a claim for breach of oral contract and promissory estoppel; and (3) an implied contract/quasi contract theory cannot be alleged when a contract is alleged. However, Defendants' arguments fail for the reasons set forth below. As such, when drawing all reasonable inferences in favor of the Plaintiff, this matter should not be dismissed as Plaintiff has stated a claim upon which relief can be granted.

#### 1. McCann and/or Momentum were not acting merely as agents; thus, they should be held personally liable on the contract(s).

Generally, an agent is not liable when acting on behalf of a disclosed principal; however, an agent may agree to assume liability by joining the principal as a party to the contract. *Freeman v. Liu*, 112 F.R.D. 35, 39 (N.D.Ill. 1986). The court must first look to

the parties' contract(s) to determine the parties' intent when they signed the contract(s). *Id.* at 37-38; *See also,* Restatement (Second) of Agency, § 323(1) and (2) (1957). This Court's analysis should include review of the NHRA Pro Stock Motorcycle Drag Race Partnership Agreement ("Agreement") dated October 19, 2005, along with the Assignment and Assumption of Don Schumacher Pro Stock Motorcycle Drag Racing Partnership Agreement ("Assignment Agreement") to determine the parties' interests. *See, Exhibits A and B respectively to Plaintiff's Complaint.* Should the Court be unable to yield an unambiguous answer from review of the contracts, it also may look to extrinsic evidence to guide its decision regarding the parties' intent. *Id.*

  a. **The contract(s) executed by the parties yield unambiguous language evidencing McCann as a principal and/or personally liable on the contract(s).**

The original Agreement, as referenced in Plaintiff's Complaint, was drafted and executed as follows: "This Agreement…by and between Relay Inc ("Relay")…acting as agent for Leo Burnett USA, Inc. ("Leo Burnett") on behalf of the United States Army Accessions Command ("USAAC"),(Relay, Leo Burnett and USAAAC should be collectively referred to hereinafter as "Advertiser") and Don Schumacher Racing." *See, Exhibit A.* The contract was signed by John Dolan, CEO of Relay, Inc., "as agent for Leo Burnett USA, Inc. on behalf of its client the United States Army Accessional Command" and Don Schumacher, President of DSR. *Id.* It is clear by the language and signatures that Relay was the agent and Leo Burnett and USAAC were the principals to this Agreement.

The Assignment Agreement was made as of June 26, 2006, "by and between Leo Burnett USA, Inc. on behalf of the United States Army Accessions Command

9

("Assignor") and McCann Erickson, Inc. ("Assignee"). *See, Exhibit B.* The Assignment Agreement further stated, in relevant part, "Assignor desires to assign, transfer and delegate to Assignee, and Assignee desires to accept and assume from Assignor, all of Assignor's rights, title, interests, liabilities, obligations, and duties under the Pro Stock Partnership Agreement." *Id.* The Assignment Agreement was signed on by Ray DeMorang, on behalf of Assignor, Leo Burnett, and by Michael Byrne, on behalf of Assignee, McCann.

Without question, the language of the Assignment Agreement places McCann in the shoes of Leo Burnett, who was previously acting as a principal with the USAAC to the original Agreement. The literal language of the Assignment Agreement places McCann, the Assignee, in the place of both Leo Burnett <u>and</u> the USAAC, the Assignors. Thus, no question remains as to the intent of the parties to the contract; McCann meant to have personal liability to the Agreement through the execution of the Assignment Agreement.

Regardless, Plaintiff need not prevail on the merits of its claim, but merely state a claim upon which relief can be granted. Plaintiff's Complaint states that there was a written Contractual Partnership between McCann Erickson and DSR relating to the NHRA Pro Stock Motorcycle Drag Racing Series. *Plaintiff's Complaint, Paragraph 13.* While taking all of Plaintiff's allegations as true, Plaintiff stated the principal relationship between McCann Erikson and DSR.

**b.    Moreover, extrinsic evidence, if considered, shows McCann and/or Momentum expected to be held personally liable under the contracts.**

After the parties signed the Assignment Agreement, McCann (Momentum) acted as if they expected to be held personally liable under the contract. First and foremost, on September 26, 2006, Mr. Peter Office of Momentum authored a letter to Don Schumacher, DSR's President, indicating renewal of the primary sponsorship of DSR's Pro Stock Motorcycles. Mr. Office further stated, "on behalf of the U.S. Army and Momentum, we value your partnership and look forward to a promising future ahead!" *See, Exhibit C to Plaintiff's Complaint.* Further, it was Momentum that DSR invoiced for the fees under the Agreement. Finally, McCann paid all of the sponsorship fees, hospitality fees, appearance fees and another other applicable fees charged by DSR under the sponsorship Agreement. The checks from Momentum, McCann-Erickson USA, Inc., to Don Schumacher Racing Corporation in payment of the 2007 sponsorship fees under the Agreement will be submitted as Exhibits under seal as evidence Defendants acted as principals under the Contractual Partnership. *See, Group Exhibit D to be filed under seal.* DSR received all communication regarding final decisions relating to the Agreement, as well as all payment of monies associated with the Agreement from McCann, which clearly evidence personal liability.

2.    **This matter falls outside of the purview of the Illinois Statute of Frauds as this contract could be performed within one year, as such DSR's oral contract and promissory estoppel claims should not be dismissed.**

Defendants argue that DSR's [oral] contract and promissory estoppel claims are barred by the Illinois Statute of Frauds. The Illinois Statue of Frauds states, "no action shall be brought...upon any agreement that is not to be performed within the space of one

11

year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." 740 ILCS 80/1.  The test to determine if an agreement is subject to the one year provision of the statute of frauds is whether, when it was made, it was <u>capable of full performance within one year</u>, not whether full performance was likely. *Dumas v. Infinity Broadcasting Corp.*, 2003 WL 23509644, *3 (N.D.Ill), citing, *Silvestros v. Silvestros*, 206 Ill.App.3d 84 (1st Dist. 1990)(emphasis added), see also, *Stein v. Malden Mills, Inc.*, 9 Ill.App.3d 266, 271 (1st Dist. 1972)(holding an oral agreement for payment of commissions that could come in forever, but could just as possibly cease prior to the expiration of one year falls outside of the statute of frauds).

What Defendants fail to recognize is that there is a contract partly in writing (the Partnership Agreement dated October 19, 2005) and partly in parole (the oral agreement between Defendants and Mr. Schumacher proffered between July 15, 2007 and August 1, 2007) in this matter.  The Partnership Agreement was a written agreement whereby Defendants desired to partner with DSR in the Powerade NHRA Pro Stock Motorcycle Drag Racing series through December 31, 2010. *Exhibit A.*   Pursuant to the written terms of the Partnership Agreement, the [Defendants] shall have the first option to renew this Agreement for a Renewal Period upon such terms and conditions as the parties shall renegotiate as herein provided and in the amount as described under ¶6; "Consideration." *Exhibit A.*  The Renewal Period is defined as, "an extension of the Contract Period in accordance with the terms and conditions hereof." *Exhibit A.*

12

The test for determining the one year period within which an oral contract must be performed under the statute of frauds is measured from the date the agreement is made and is extended to the termination date agreed by the parties. *Sherwin v. Ault*, 219 Ill.App.3d 213, 215 (3rd Dist. 1991). Given the terms of the Agreement, the oral contract (to renew the written contract) could be performed within one year. The parties never intended for the oral agreement to last more than the few month negotiation period to which the subsequent written contract would be drawn up and executed. This is evidenced by the deadline given in the contract which states if the parties fail to negotiate within a specific time period the right of renewal is null and void. *Exhibit A.*

Further enforcing this view is that the parties' oral agreement that was made in 2006 for the 2007 season. Defendants verbally committed to renew the Partnership Agreement with DSR prior to August 1, 2006. *Plaintiff's Complaint, Paragraph 14.* After the verbal commitment was given to renew the Partnership Agreement, the written renewal terms were placed into writing after August 1, 2006. *Plaintiff's Complaint, Paragraph 15.* This is specifically evidenced by Defendants' letter dated September 26, 2006, whereby written confirmation of the renewal of the Partnership Agreement for the 2007 season. *Exhibit C.* In 2006, the parties' oral contract lasted a mere few months until the contract was placed into writing satisfying the statue of frauds. The same holds true for the parties' 2007 oral contract, as such Plaintiff's claims should not be dismissed under the statute of frauds.

### 3. Plaintiff may assert a quasi-contract claim and an express contract claim in the same cause of action pursuant to Federal Rule of Civil Procedure 8(e)(2).

Defendants argue that "plaintiff cannot recover under a quasi-contract theory where the plaintiff alleges the existence of an express contract between the parties." However, Defendants' argument is misplaced as Illinois Federal Courts have held, pursuant to Federal Rule of Civil Procedure 8(e)(2) and supporting case law, that a party may assert alternative or inconsistent legal theories. *Davis v. Green*, 1992 WL 168924, *3 (N.D.Ill. 1992). For example, a plaintiff can allege breach of an express contract and in another count sue on an implied contract theory. *Id.* The fact that a plaintiff has chosen to plead alternative legal theories of recovery will not be grounds for dismissal of a complaint. *Id.* Up and until the time the Court rules there was a contract formed between the parties, DSR is allowed to plead quasi-contractual relief. *See, Cromeens, Holloman, Sibert, Incorp. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). As such, Plaintiff's count alleging quasi-contract should not be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Defendants, while arguing that DSR cannot bring a quasi-contract claim, argue in the same breath that DSR failed to successfully plead a claim for quasi-contract. A complaint will be held as sufficient to state a claim for quasi-contract, where it briefly alleges that the plaintiff's acts benefitted the defendant. *Davis*, 1992 WL 168924 at *2, citing, *Fullop*, 22 F.R.D. 52, 55-56 (N.D.Ill. 1958). DSR's Complaint alleges in paragraph 43, "DSR relied upon the Relationship and past practices formed through the Relationship in order to move forward with the Sponsorship as done in past years." When DSR moved forward with the sponsorship it benefited Defendants and caused

14

damages to DSR in excess of $4,000,000. However, even if this Court finds that DSR did not properly allege a quasi-contract claim, DSR should be given the right to amend its Complaint to cure the pleading defect.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss premised upon Federal Rule of Civil Procedure 12(b)(7) and 12(b)(6) in its entirety.

Dated: July 24, 2008

Respectfully submitted,
DON SCHUMACHER RACING


By: /s/ Shantel D. Bill
     One of its attorneys

Charles Chejfec (#6230825)
Christopher Stetler (#6284070)
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661
(312)902-5200 telephone
(312)902-1061 facsimile
Charles.chejfect@kattenlaw.com
Christopher.stetler@kattenlaw.com


Cory Watkins (Pro Hac Admission)
Shantel Bill (#6276197)
Don Schumacher Racing Corporation
801 Business Center Drive
Mount Prospect, IL 60056
(224)612-7250 telephone
(847)299-5830 facsimile
watkinsc@schumacherelectric.com
bills@schuamcherelectric.com

15