IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DON SCHUMACHER RACING, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 1428 |
| v. | ) ) | Judge Gottschall |
| McCANN ERICKSON USA, INC. and MOMENTUM WORLDWIDE, INC., | ) ) ) ) | Magistrate Judge Valdez |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO JOIN A REQUIRED
PARTY PURSUANT TO FED. R. CIV. P. 12(b)(7) AND 19(b) AND FOR
FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants McCann Erickson USA, Inc. ("McCann") and Momentum Worldwide, Inc. ("Momentum") (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this Reply Memorandum of Law in Support of their Motion to Dismiss for Failure to Join a Required Party Pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b), and for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss").[1]

**I.      INTRODUCTION**

DSR's strained interpretation of the Partnership Agreement ignores the import of the document's clear and unambiguous language: McCann entered into the Partnership Agreement *on behalf of* the Army-AC. Based on that alone, the Motion to Dismiss should be granted. In addition, (a) DSR concedes that Momentum was not a party to the Partnership Agreement or the Assignment; (b) DSR ignores the well-established rule that contracting parties are necessary and indispensable; (c) DSR does not deny that any alleged renewal must be in writing under the terms of the

---

[1] Unless stated otherwise, capitalized terms used herein have the same meaning ascribed to them in Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Def. Memo.").

Partnership Agreement and an oral renewal does not qualify; (d) DSR does not quarrel with Defendants' description of the agency relationship between McCann and the Army-AC; and (e) DSR admits that the Army-AC was a principal party to the Partnership Agreement.  Separately or together, these are fatal defects in DSR's Complaint.  Moreover, DSR's reliance on cases dealing with absent joint tortfeasors, rather than absent contracting parties, is entirely misplaced.  Indeed, the case law is clear that a contracting party is a "paradigm" necessary and indispensable party under the factors set forth in Rule 19.  Therefore, the Complaint must be dismissed pursuant to Rule 12(b)(7).

The Complaint also must be dismissed under Rule 12(b)(6).  DSR acknowledges that an agent cannot be liable for acts of a disclosed principal, but asserts that McCann was a "co-principal."  On the contrary, the Partnership Agreement conclusively establishes McCann's agency status by its clear terms (*on behalf of*), and its stated purpose:  DSR's promotion and sponsorship efforts were to benefit the Army-AC, not the Defendants.  In addition, the breach of contract and promissory estoppel claims are barred by the Statute of Frauds, and the quasi-contract claim fails because DSR *expressly* incorporates allegations of a contract between the parties.  For all of these reasons, the Complaint must be dismissed in its entirety, with prejudice.

## II.    ARGUMENT

### A.    DSR Cannot Avoid Dismissal for Failure to Join the Army-AC.

#### 1.    <u>DSR Concedes the Army-AC is a Necessary Party.</u>

DSR attempts to downplay the significance of the Army-AC's absence as a defendant in this case, but is forced to concede that the Army-AC was a principal party to Partnership Agreement.  (*See* Plaintiff's Memorandum of Law in Support of its Response to Defendants' Motion to Dismiss ("Resp. Memo.") at p. 5 ("DSR may seek relief in the Court of Claims against the Army if the Court dismissed this action."), and p. 9 ("It is clear by the language and signatures that … Leo

Burnett and USAAC were the principals to [the Partnership Agreement.]").) Having admitted that the Army-AC was a principal party that would be liable to DSR for breach of contract, DSR does not and cannot distinguish well-established Rule 19 jurisprudence compelling the conclusion that the Army-AC is a necessary party for purposes of Rule 19(a). Indeed, the Army-AC's status as a necessary party is entirely consistent with the rationale behind Rule 19 because this Court's interpretation of the Partnership Agreement in the context of this litigation would necessarily affect the respective rights and obligations of *all* the parties to the Partnership Agreement, including the Army-AC.

This was precisely the case in *United States ex rel. Hall v. Tribal Development Corp.*, 100 F.3d 476, 479-80 (7th Cir. 1996), where the Seventh Circuit stated that an absent party to an agreement has a commercial stake in the outcome of the litigation because a judicial declaration as to its validity would affect the interests of all parties to the agreement. *See also Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982) ("In breach of contract actions, all parties to the contract are necessary ones."); *Elmhurst Consulting, LLC v. Gibson*, 219 F.R.D. 125, 128 (N.D. Ill. 2003) (same); *Burger King Corp. v. Am. Nat'l Bank and Trust Co.*, 119 F.R.D. 672, 675 (N.D. Ill. 1988) ("If the absent party has a legally protected interest in the subject matter of the action – *i.e.* he is a party to a contract at issue – he falls squarely within the terms of Rule 19(a)(2)."). DSR ignores the clear application of the Seventh Circuit's decision in *Hall* to the present case, and fails to provide any analysis to the contrary other than to say that it could pursue its purported claims against the Army-AC in separate litigation. First, that misses the point of the analysis under Rule 19(a) – the Army-AC's interests in *this* litigation are at stake. Second, it undermines the judicial efficiency goal of Rule 19, providing further support for finding the Army-AC to be a necessary party.

DSR relies upon *Continental Casualty Co. v. Am. Home Assurance Co.*, 2008 WL 1752231 *2 (S.D.N.Y. April 14, 2008), to argue that the Army-AC's interest are insufficient to make it a necessary party, but that case is inapposite because the absent defendant there *was not a party to the contract*. *See id.* at *5 ("Again, the instant case is distinguishable because [the absent party's] interests only arise out of the fact that it stood to benefit under the contract although it was not a party thereto.  Interests of this kind are insufficient to make [the absent entity] a necessary party.") (cited in Resp. Memo. at pp. 4, 6).  Thus, the case most heavily relied upon by DSR is completely off point.

DSR also attempts to argue that the Army-AC's interests would not be impaired because DSR "is not pursuing the Army in this cause of action and as such the Army cannot be liable for breach in this matter." (Resp. Memo. at p. 5.)  On the contrary, DSR's argument plainly ignores the very real possibility of issue or claim preclusion against the Army-AC should the Court proceed to issue factual findings with respect to a contract to which the Army-AC is indisputably a party.  *See, e.g., Rivera Rojas v. Loewen Group Intern., Inc.*, 178 F.R.D. 356, 362 (D. P.R. 1998) (noting that a favorable ruling for plaintiff could bind absent party on *res judicata* or collateral estoppel grounds); *Capital Markets Internat'l, Ltd. v. Gelderman, Inc.*, No. 97 C 7717, 1998 WL 472468, *4 (N.D. Ill. Aug. 7, 1998) (noting that defendant's attempt to shift liability to absent party, and the preclusive effect of such a finding, would prejudice absent party).

Indeed, even the establishment of "negative precedent" against an absent party is considered a sufficient threat to the absent party's interests such that it is deemed a necessary party for purposes of Rule 19(a).  *See Bennett v. Tucker,* 827 F.2d 63 (7th Cir.1987) ("Rule 19[(a)(2)(i)] *requires* persons to be joined if the judgment in a pending action, although not res judicata as to them, would so definitively establish their legal rights that it would be inequitable not to join them.") (emphasis added); *Reliable Personnel, Inc. v. Custom Cartage, Inc.*, 1994 WL 406405, *5

(N.D. Ill. Aug. 2, 1994) ("The case law under Rule 19 has recognized that the establishment of a negative precedent can provide the requisite prejudice to the absentee.") (citations omitted). Accordingly, DSR's naked assertion that the Army-AC is not a necessary party finds no support in the law.

> 2. DSR Fails to Refute the Army-AC's Status as an Indispensable Party Under Rule 19(b).

DSR concedes that joinder of the Army-AC is not feasible due to the fact that the Tucker Act vests exclusive jurisdiction over the Army-AC in the Court of Federal Claims. Thus, the Court need only consider the factors set forth in Rule 19(b) to determine that the Army-AC is, in fact, an indispensable party. DSR suggests that Defendants have not "satisf[ied] their burden by 'showing the nature of the interest possessed' by the Army and 'how that interest will be impaired by the absence.'" (Resp. Memo. at p. 6 (citations omitted).) Yet as numerous courts have recognized, the same threatened interests that give rise to an absent party's status as a necessary party under Rule 19(a) also may render it an indispensable party under the factors set forth in Rule 19(b). *See Burger King Corp. v. Am. Nat'l Bank and Trust Co.*, 119 F.R.D. 672, 679 (N.D. Ill. 1988) (citing *Provident Tradesmens Bank & Trust v. Patterson,* 390 U.S. 102, 109 (1968); *Bio-Analytical Services v. Edgewater Hospital,* 565 F.2d 450, 452 (7th Cir.1977)).

Proceeding in the Army-AC's absence posses substantial risks to its interests as a party to the Partnership Agreement. At a minimum, the Court would be required to adjudicate the respective rights and obligations of the parties to the Partnership Agreement, including the Army-AC, and to determine whether a breach occurred. Any such findings would likely bind the Army-AC in subsequent litigation, whether brought by DSR or Defendants in the Court of Federal Claims. *See Rivera Rojas*, 178 F.R.D. at 362 ("If the Court is to rule on how these contracts – contracts to which [the absent party] is a signatory – are to be performed or enforced, [the absent party] has an interest in this litigation. Favorable rulings for Plaintiffs could bind [the absent party] under the

doctrine of res judicata and collateral estoppel."). Indeed, a final judgment on the merits may well preclude the Army-AC from re-litigating issues that were or could have been raised in the instant action under principles of res judicata, given the existence of privity between the Army-AC and McCann as principal and agent. *See Brzostowski v. Laidlaw Wate Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995) (Res judicata requires "identity of the parties or their privies in the two suits"). It is for this very reason that courts consider parties to a contract to be a "paradigmatic example of an indispensable party," because a judgment rendered in the party's absence would impair its ability to protect its interest in the contract. *See Elmhurst*, 219 F.R.D. at 128; *Capital Markets*, 1998 WL 473468, at *3; *Expeditors of Washington, Inc. v. Expeditors (Japan) Ltd.*, 2004 WL 2369911 (W.D. Wash. Oct. 7, 2004) (granting motion to dismiss for failure to join an indispensable party where one of the parties to an asset purchase agreement was not named in a suit alleging breach of the agreement).

Not only does DSR fail to distinguish the myriad cases finding contracting parties to be necessary and indispensable, but the cases relied upon by DSR are inapposite. Those cases deal with absent joint tortfeasors whose participation in the same action is not required because joinder is considered permissive by virtue of joint and several liability. *See, e.g., Marshall v. Navistar Intern. Transp. Corp.*, 168 F.R.D. 606, 610 n.6 (E.D. Mich. 1996) ("It is well-established that a joint-and-several tortfeasor is not 'indispensable.'") (cited in Resp. Memo. at p. 7). This, however, is a breach of contract case, and the Army-AC (as DSR admits) was a principal party to the contract. Unlike cases involving joint tortfeasors, the analysis under Rule 19(b) for breach of contract actions focuses most heavily on the contractual interests that would be impaired as a result of a judgment in the unnamed party's absence. DSR has completely missed the contract versus tort distinction.

DSR suggests that Defendants' inability to implead the Army-AC is of no consequence because potential contribution or indemnification claims are not a basis for joinder.

(*See* Resp. Memo. at p. 7.)  Yet, DSR again relies upon cases involving joint tortfeasors, which are inapplicable here.  Moreover, the inability to implead the Army-AC, as the disclosed principal to the Partnership Agreement, precludes the possibility of shaping relief so as to avoid prejudice to Defendants, which is another factor in favor of a conclusion about indispensability under Rule 19(b)(2).  In any event, DSR does not dispute that it has an alternate forum to bring its purported claims for breach of the Partnership Agreement, *i.e.*, the Court of Federal Claims, which should satisfy this Court that DSR would have an adequate remedy if this case were dismissed for non-joinder.  *See* Fed. R. Civ. P. 19(b)(4).

In sum, the Rule 19(b) factors, taken singly or in their entirety, amply demonstrate that the Army-AC is an indispensable party requiring a dismissal under Rule 12(b)(7).

    **B.**    **DSR Fails to State a Cognizable Claim Against Defendants.**

        1.    The Partnership Agreement Confirms the Army-AC's Status as Sole Principal, and Thus Defendants, as Agents, Cannot be Liable for its Breach.

DSR concedes the fundamental tenet of agency law:  an agent cannot be held liable for the acts of its disclosed principal.  Attempting to sidestep that principle, DSR advances an entirely untenable interpretation of the Partnership Agreement that is contrary to its plain language.  DSR asserts that Defendants were somehow co-principals to the Partnership Agreement along with the Army-AC, which is particularly curious in light of the fact that Momentum was not even a party to the Partnership Agreement or the Assignment.  In any event, DSR's tortured reading fundamentally mischaracterizes the nature of the Partnership Agreement, as evident by its clear and unambiguous terms.

First, the Partnership Agreement (as assigned from Leo Burnett to McCann under the Assignment) explicitly spells out the agency relationship between the parties.  The introductory paragraph states: "This Agreement is … by and between Relay Inc … acting as the agent for Leo Burnett, *on behalf of* the [Army-AC]."  (Compl. Exh. A (emphasis added).)  The phrase "on behalf

of" makes crystal clear that the Army-AC was the principal, and Leo Burnett (whose role was later assigned to McCann) was the agent. *See* Restatement (Third) of Agency § 1.01 (2006) (an agent acts *on another person's behalf*). Indeed, the same terminology is incorporated in the signature page which reiterates that Relay, Inc. executed the Partnership Agreement in its capacity "[a]s agent for Leo Burnett … *On behalf of its client* [the Army-AC]" (Compl. Exh. A (emphasis added).) The roles of McCann, as agent, and the Army-AC, as principal, could not be more clear.

DSR argues, however, that McCann assumed the status of a co-principal along with the Army-AC by virtue of the Assignment. But the notion that Leo Burnett "was previously acting as a principal with the [Army-AC]" (*see* Resp. Memo. at p.10) is completely belied by identical terms from the Partnership Agreement that were incorporated in the Assignment. As the Assignment itself states, Leo Burnett was acting "on behalf of" the Army-AC. (*See* Compl. Exh. B.) Thus, McCann could not have received any greater status through the assignment vis-à-vis the Partnership Agreement than Leo Burnett.

In a rather desperate effort to undermine the otherwise clear and unambiguous language in the Partnership Agreement, DSR argues that it has "stated [in its Complaint] the principal relationship between McCann Erikson and DSR" (Response Memo. at p. 10), which is all that is required to defeat a motion to dismiss. Not so. Under the Federal Rules of Civil Procedure, exhibits attached to a complaint are incorporated as allegations, and, in fact, supplant contrary language in the Complaint itself. *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (citations omitted). Thus, even if DSR explicitly alleged (it did not) that Defendants were principal parties to the Partnership Agreement, any such allegations must be rejected in the face of contrary language contained in the Partnership Agreement and Assignment.

If there were any doubts regarding the parties' respective roles, they should be resolved by recognizing that the Army-AC was the beneficiary of DSR's performance under the Partnership Agreement. In exchange for sponsorship payments, DSR was required, *inter alia*, to display Army trademarks and logos on its equipment, and to undertake other marketing efforts on behalf of the Army, including making its racers and staff available for media and public events. (*See* Compl. Exh. A, §§ 3.2-3.4.) Thus, DSR promoted the Army-AC (and only the Army-AC). McCann, as agent for the Army-AC, assisted in the coordination of these marketing efforts, but McCann was not itself a DSR sponsor. For example, DSR did not display McCann trademarks or logos. Accordingly, in addition to the plain language of the Partnership Agreement, the nature of the contractual relationship demonstrates that the Army-AC and McCann were not "co-principals" when only one of them (the Army-AC) received the benefit from DSR's promotion efforts.

DSR attempts to ignore the words and structure of the Partnership Agreement, and instead relies on "extrinsic evidence" consisting of invoices from DSR to Momentum, and checks issued by Momentum to DSR. (*See* Resp. Memo., Exh. D.) In the first instance, such extrinsic evidence has no place in contractual interpretation where the language itself is unambiguous and where, as here, the contract contains an integration clause. (Compl. Exh. A. ¶ 13); *see Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 461 (1999) ("[A]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence."). Moreover, the fact that DSR's invoices were issued to Defendants, and Defendants paid them on behalf of the Army-AC, is entirely consistent with the agency relationship between McCann and the Army-AC. The agent "acts" (*i.e.*, pays the bills) and the principal is the one for whom action is taken. *See* Restatement (Third) Agency § 1.01, comment c.

DSR's tortured reading of the Partnership Agreement cannot refute its clear and unambiguous terms, which establish the Army-AC as the disclosed principal and McCann as its agent. Accordingly, under well-established agency law, DSR's claims against Defendants fail as a matter of law. (*See* Def. Memo. at pp. 10-11) (citing cases).)

        2.        The Alleged Oral Contract Contemplates Performance Over One Year and Thus is Barred by the Statue of Frauds.

DSR attempts to recast the "oral contract" alleged in its Complaint as merely an oral agreement that "the parties never intended … to last more than the few month negotiation period to which the subsequent written contract would be drawn up and executed." (Resp. Memo. at p. 13.) DSR's new characterization (not pleaded in the Complaint) is contrary to its own allegations, and at odds with the Statute of Frauds as applied by Illinois courts.

DSR expressly alleges that "Defendants verbally agreed with [DSR] that the [Partnership Agreement] would continue through 2008 ('Oral Agreement to Renew Contractual Partnership')" (Compl., ¶ 17), and that "Defendants verbally committed an offer to DSR … that the [Partnership Agreement] would continue through 2008." (*Id.*, ¶ 25; *see also id.*, ¶ 5 ("This is an action stemming from breach of contract due to the failure of McCann Erickson and Momentum to honor an oral agreement to renew a written agreement between DSR and Defendants in the summer of 2007.").) Contrary to these allegations, and simply for the sake of its effort to rescue the Complaint, DSR now takes the position that the "oral contract" (which form the basis of its breach of contract claims) was only intended to last the 1-2 month period until a written agreement could be reached.

Yet, as its Complaint makes clear, DSR seeks to hold Defendants liable for their non-performance under the Partnership Agreement for the entire 2008 racing season, which would purport to impose obligations upon Defendants from not later than August 2007 (when the alleged oral agreement was accepted) until December 31, 2008. DSR certainly would not concede that its

$4 million claimed damages for breach would be limited merely to the period between July and September 2007.

An oral renewal of an underlying written agreement is barred by the Statute of Frauds. This is exemplified by the holding in *Sherwin v. Ault*, 219 Ill. App. 3d 213 (3d Dist. 1991), where the plaintiff sought to recover for breach of an alleged oral agreement to extend a farm operating agreement. The oral renewal, allegedly entered into in October 1987, covered the period between March 1, 1988 and December 31, 1988. The court rejected the breach of oral contract claim as barred by the Statute of Frauds, stating that "[a]ny agreement for the March through December, 1988 crop year which was made prior to December 31, 1987 would have to have been in some written form to avoid the bar of the Statute of Frauds." *Id.* at 216. Here, the oral renewal was allegedly entered into between July and August 2007, and covered the period through December 31, 2008. *Sherwin* is on point and dispositive. DSR cites *Sherwin* (Resp. Memo. at p. 13) but misapplies its holding: the one-year period for an oral renewal extends through the termination date of the underlying written agreement.

DSR attempts to confuse the issue by suggesting the existence of two separate agreements, when its claims are based on only one – the alleged oral renewal in August 2007 of the Partnership Agreement, which by its own terms could not be completed earlier than December 31, 2008. Moreover, DSR's reliance upon a letter confirming the renewed Partnership Agreement for 2007 (Resp. Memo. at p. 13) is unavailing. Such extrinsic evidence cannot be considered in light of clear terms in the Partnership Agreement requiring any renewals to be in writing. (Compl., Exh. A, § 2.2); *see Air Safety*, 185 Ill.2d 461.

Similarly, DSR's allusion to "a contract [to renew] partly in writing and partly in parole" (Resp. Memo. at p. 12) is expressly forbidden by the Partnership Agreement and should be rejected. (*See* Compl., Exh. A, § 2.2 ("To exercise its right to a Renewal Period, Advertiser shall

give Schumacher *written notice* of its intention to renew prior to July 15, 2006.") (emphasis added) and § 1.3 ("Renewal Period shall mean an extension of the Contract Period [January 1 to December 31] in accordance with the terms and conditions hereof.").)  Moreover, the Partnership Agreement contains an integration clause that requires any waiver or modification of its terms to be expressly agreed to in writing by the parties.  Thus, DSR cannot purport to rely upon a partial oral agreement as evidence of any alleged renewal of the Partnership Agreement for 2008.

3.  DSR's Quasi-Contract Claim Fails.

DSR cannot allege the existence of an enforceable contract between the parties, and simultaneously purport to state a claim based on quasi-contract.  In paragraph 38 of the Complaint (the first paragraph under its quasi-contract claim), DSR re-alleges and adopts each of the previous paragraphs as if fully set forth therein.  Those paragraphs allege the existence of an enforceable oral and written contract between DSR and Defendants.  Accordingly, as the cases cited in Defendants' opening brief demonstrate, DSR's quasi-contract claim should be dismissed on this basis alone. (*See* Def. Memo. at p. 14.)

Moreover, DSR cannot simply cure this defect by omitting reference to allegations of an enforceable contract.  DSR has not alleged (nor can it) that Defendants received any benefit from DSR that should be disgorged.  DSR's suggestion that "when DSR moved forward with the sponsorship it benefited Defendants and caused damages to DSR in excess of $4,000,000" (Resp. Memo. at p. 15) finds no support in any allegation in the Complaint.  In any event, DSR's partial performance (although not alleged in the Complaint), would have benefited, if at all, the Army-AC, the principal party to the Partnership Agreement, and not Defendants.  Accordingly, DSR's quasi-contract claim against Defendants must be dismissed.

## III.   CONCLUSION

For the foregoing reasons, and for the reasons stated in their opening Memorandum of Law, Defendants' Motion to Dismiss for Failure to Join a Required Party Pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b), and for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6), should be granted.  It might be possible to amend the Complaint to attempt to cure one of the problems – *i.e.*, the pleading of the quasi-contract claim – but the other defects are fatal and cannot be cured, such as the failure to sue a necessary and indispensable party, and a suit against an agent for a disclosed principal.  Therefore, the Complaint and this action should be dismissed with prejudice.

Dated: August 11, 2008

                                            Respectfully submitted,

                                            McCANN ERICKSON USA, INC. and MOMENTUM WORLDWIDE, INC.

                                            By  /s/ David R. Lidow
                                                One of Their Attorneys

Frederic R. Klein
Deborah Rzasnicki Hogan
David R. Lidow
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on August 11, 2008, he caused a true and correct copy of the foregoing **Defendants' Reply Memorandum of Law in Support of Motion to Dismiss for Failure to Join a Required Party Pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b) and for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)** to be served upon the following through the Court's electronic notification system to:

> Charles Chejfec
> Christopher John Stetler
> Katten Muchin Rosenman LLP
> 525 West Monroe Street
> Chicago, IL 60661


> Cory A. Watkins
> Shantel Darie Bill
> Schumacher Racing Corporation
> 801 Business Center Drive
> Mount Prospect, IL 60056

/s/ David R. Lidow